IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EUGENE ANDERSON,**

    **Petitioner,**

    v.                                   **CASE NO. 2:05-cv-1089**

                                        **JUDGE MARBLEY**

**THOMAS MCBRIDE, Warden,**              **MAGISTRATE JUDGE KEMP**
**REGINALD WILKINSON, et al.,**

    **Respondents.**

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's request for a stay of proceedings, petitioner's traverse, and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's request for a stay of proceedings, Doc. No. 2, and respondent's request for a stay or dismissal of petitioner's claims be **DENIED**, and that respondent be **DIRECTED** to provide supplemental briefing regarding the merits of petitioner's claims, and a copy of the state trial transcript within twenty (20) days of the date of this order.

Petitioner's April 17, 2006, request for an extension of time to file further pleadings if so required, Doc. No. 10, is **DENIED**, as moot.

**I. FACTS and PROCEDURAL HISTORY**

The Ohio Fourth District Court of Appeals summarized the facts of this case as follows:

    Law enforcement officers began investigating Anderson, who lived

in West Virginia but worked in Ohio at Marietta College, because of Jay Johnson's statements that criminal activity was ongoing at Marietta College. This investigation led to search warrants for Anderson's residence and work place where officers seized items that included computers and computer media.

Officers arrested Anderson. After the officers explained to him that he was charged with unlawful sexual conduct with a minor, Anderson responded, "Not now, I'm not." Anderson told the officers that his office computer should not have any child pornography on it. However, he said that he did have sexual relationships with young adult males. He admitted that he entertained young male teens in the hope that they would engage in sex with him when they turned 18. Anderson admitted to having adult pornography on his computer. He said that, figuratively speaking, his robotic arm on his computer would capture pictures from the internet. He said that he would go through the pictures and delete the ones that he did not want. When an officer showed him a couple of pictures of young males that were minors on his computer, he said that those pictures should not be there, that they should have been deleted.

Trained forensic officers and analysts examined the computers and used an EnCase program to look at deleted files. Anderson's work computer had recently accessed a computer identified as "Caleb." Officers discovered that Caleb was a special computer server that only Anderson and a Robert Sandford could access. While officers were investigating the Marietta College Network, they later learned that Sandford was deleting and damaging information on Caleb from computers at Ohio University, which is where Sandford worked. Officers eventually located Caleb at Marietta College and disabled and seized it.

At B.C.I., the forensic officers continued to use EnCase and other methods to image or copy the computer hard drives, storage devices, and Caleb to recover deleted data. They found images of child pornography and evidence that Anderson used and maintained Caleb as a hidden server to store pictures, which included images of child pornography. These images depicted juveniles that were nude or engaged in sexual activity.

The computer examiners also found close to 8,000 internet relay chat transcripts. One officer identified chats that Anderson had with young men that he had transported from West Virginia to Marietta College so that they could engage in sexual activity. This officer further found

>evidence in the chat logs where Anderson admitted paying these young men for sexual activity when they were under the age of 18. Anderson talked about his vast collection of pornographic pictures and described as "more taboo" pictures that depicted sex between older men and boys. The chat logs further showed that Anderson used Caleb and helped Sandford set up and maintain it at Marietta College. In the chat logs, Anderson repeatedly identified himself, his position, his e-mail address and telephone numbers.
>
>Investigators used the information in the chat logs to identify the young teenagers that Anderson had relationships with. One relatively local victim, who used the name "Boxerboy" in the chats, was Dustin Williams from Jackson, Ohio. Officers identified the pornographic pictures that Boxerboy took of himself and sent to Anderson before he was 18. Officers identified Jay Johnson, Jason Ek and Brian Sidwell as young men whose pictures were found on Anderson's computers and whose names appeared in the chat logs.
>
>The grand jury indicted Anderson. He pled not guilty to all the charges and had a jury trial.
>
>The young men that the investigators identified in the chat logs testified at trial that their relationships with Anderson started when they were young teenagers. They described the gifts and money that Anderson provided them and how he paid them to go to his office and have sex. Their mothers testified about the time of their sons' relationships with Anderson and about the gifts and money their sons received from him. The state introduced into evidence numerous images of child pornography.
>
>The jury found Anderson guilty of 108 criminal offenses and found him not guilty of 25 criminal offenses. The trial court sentenced him to a total of 75 years and four (4) months definite time and four years to 25 years indefinite time in prison with consecutive maximum sentences for the offenses where he had direct contact with the young men and where he actively participated in the creation of the child pornography.

Exhibit 10 to Return of Writ.

Petitioner was indicted by the 2001 term of the Washington County grand jury with co-defendant Robert Sanford in Case No. 01-CR-218 in a 201 count indictment on charges of pandering

obscenity involving a minor, pandering sexually oriented matter involving a minor, complicity in pandering sexually oriented matter involving a minor, illegal use of a minor in nudity oriented material, complicity in illegal use of a minor in nudity oriented material, unauthorized use of property, computer or telecommunications property, and corruption of a minor. Exhibit 1 to Return of Writ. Petitioner also was indicted in Case No. 01-CR-238 on nine counts of promoting prostitution, in violation of O.R.C. 2907.22(A)(3). Exhibit 2 to Return of Writ. While represented by counsel, petitioner proceeded to jury trial in both cases. On August 23, 2002, he was found guilty in Case No. 01-CR-218 on three counts of pandering obscenity involving a minor, thirty-six counts of pandering sexually oriented material involving a minor, twenty counts of complicity in pandering sexually oriented matter involving a minor, fourteen counts of illegal use of a minor in nudity oriented material, twenty-eight counts of complicity in illegal use of a minor in nudity oriented material, one count of unauthorized use of property, computer, or telecommunications property, and one count of corruption of a minor. Exhibit 3 to Return of Writ. He also was found guilty in Case No. 01-CR-238 on five counts of promoting prostitution. Exhibit 4 to Return of Writ. As discussed, he was sentenced to a "total of 75 years and four (4) months definite time and four years to 25 years indefinite time in prison." Exhibit 10 to Return of Writ. Represented by new counsel, petitioner filed a timely appeal. He asserted the following assignments of error:

> I. The evidence presented at trial was insufficient to sustain Eugene Anderson's convictions for pandering obscenity involving a minor; pandering sexually oriented matter involving a minor; illegal use of a minor in nudity-oriented material; complicity in pandering sexually oriented matter involving a minor; complicity in illegal use of a minor in nudity-oriented material; promoting prostitution; and corruption of a minor, and the jury's verdicts were against the manifest weight of the evidence, thereby denying him due process of the law. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution.

4

> II. The trial court erred by overruling Eugene Anderson's motion to dismiss Count 131, because the reproduction of a chat log is not a crime. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution.
>
> III. The trial court erred by imposing maximum and consecutive sentences, and the aggregate sentence imposed was disproportionate to the seriousness of Eugene Anderson's conduct.

*See id.*; Exhibit 8 to Return of Writ.  On March 2, 2004, the appellate court affirmed the judgment of the trial court.  Exhibit 10 to Return of Writ.  Still represented by counsel, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He asserted the following propositions of law:

> 1. Child pornography and sexual offenses against children do not suspend the Ohio and Federal Constitutions.  A defendant charged with such crimes needs the protection of the provisions of the constitutions as much as the defendant charged with a less disdainful offense.  Fifth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution.
>
> 2. The reproduction of a chat log does not "show" a minor participating or engaging in sexual activity.  Unless an image is associated with the chat log, a defendant may not be convicted of pandering sexually oriented matter involving a minor.  Fifth and Fourteenth Amendments, United States Constitution.
>
> 3. Imposition of a prison term that exceeds the life-expectancy of a defendant, who has been convicted on non-violent crimes, places an unnecessary burden on governmental resources in violation of R.C. 2929.13(A) and is a cruel and unusual punishment that violates the Eighth and Fourteenth Amendments to the United States Constitution.

Exhibit 1 to Return of Writ.  On July 13, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 13 to Return of Writ.  Petitioner filed a petition for a writ of certiorari to the United States Supreme Court, which was denied on December 9, 2004.  Exhibits 16 and 17 to Return of Writ.

On August 16, 2004, petitioner filed a *pro se* delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). Exhibit 14 to Return of Writ. On September 1, 2004, the appellate court denied petitioner's application as untimely. Exhibit 15 to Return of Writ. Petitioner apparently never filed any appeal of the appellate court's decision to the Ohio Supreme Court. On August 23, 2004, petitioner filed a *pro se* petition for post conviction relief with the state trial court in which he asserted that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004). Exhibit 18 to Return of Writ. On September 15, 2004, petitioner filed an amended petition for post conviction relief, in which he again asserted that his sentence violates *Blakely v. Washington, supra*. Additionally, petitioner asserted that the statute of limitations had expired on count one, that his right to free speech was violated, and that he was denied the effective assistance of trial and appellate counsel. Exhibit 20 to Return of Writ. On September 15, 2004, petitioner again filed an amended petition for post conviction relief in which he again raised the same claims. On September 17, 2004, the State filed a motion to dismiss petitioner's post conviction petition as untimely. Such action apparently is still pending in the state trial court.[1]

On December 2, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The evidence presented at trial was insufficient to sustain the petitioner's convictions for pandering obscenity involving a minor; pandering sexually oriented matter involving a minor; illegal use of a minor in nudity oriented material; complicity in pandering sexually oriented matter involving a minor; complicity in illegal use of a minor in nudity oriented material; promoting prostitution; and

---

[1] Petitioner appears to indicate in his April 12, 2006, traverse, that his post conviction petition is still pending in the state trial court. Doc. No. 9.

6

>corruption of a minor.
>
>2. The petitioner was denied his due process, notice, and trial by jury rights, as guaranteed by the Fifth and Sixth Amendments to the United States Constitution, when he was sentenced to non-minimum, maximum, and/or consecutive sentences based on facts found by the trial judge which were neither charged in an indictment nor found by a jury beyond a reasonable doubt. (*Blakely* claim).
>
>3. The petitioner was denied due process of law when he was convicted and sentenced on count 1 of 01-CR-238, in that the statute of limitations had expired for the underlying offense prior to his being charged.
>
>4. The petitioner's right to free speech, guaranteed by the First Amendment of the United States Constitution, was violated when he was convicted and sentenced for count 131 of 01-CR-218.
>
>5. The petitioner was denied effective assistance of trial counsel, in violation of the Sixth Amendment of the United States Constitution.
>
>6. The petitioner was denied effective assistance of appellate counsel, in violation of the Sixth Amendment of the United States Constitution.

It is the position of the respondent that claim one is without merit, claim two is unexhausted, and that the remainder of petitioner's claims are procedurally defaulted.

## II. EXHAUSTION

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. §2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). But where alternative state remedies are available to consider the same claim, exhaustion of one of these

7

remedies is all that is necessary.

In claim two, petitioner asserts that his sentence violates *Blakely v. Washington*, *supra,* 542 U.S. at 296, because he was sentenced to maximum consecutive sentences by the trial court based on facts neither admitted by petitioner, nor found by the jury.  This claim is readily apparent from the face of the record, and therefore should have been raised on direct appeal; however, the state appellate court affirmed petitioner's convictions on March 2, 2004, prior to the United States Supreme Court's June 24, 2004, decision in *Blakely*.  The Ohio Supreme Court dismissed petitioner's subsequent appeal on July 14, 2004, shortly after *Blakely* was decided, but petitioner never presented his *Blakely* claim to the Ohio Supreme Court.  Exhibit 13 to Return of Writ. Nonetheless, petitioner presented his *Blakely* claim to the state courts in his August 23, 2004, petition for post conviction relief, which action apparently is still pending in the state trial court. Respondent therefore contends that the claim is unexhausted and requests a stay of proceedings pending petitioner's exhaustion of such claim in the state courts.  Petitioner likewise has filed the same request.  Doc. No. 2.  However, a stay of proceedings pending petitioner's exhaustion of claim two in the state courts does not appear appropriate under the circumstances presented.

Inordinate delay in adjudication of claims by the state courts justifies excusing the exhaustion requirement:

> The exhaustion requirement is based on principles of comity and federalism. It provides state courts an opportunity to address alleged flaws in their criminal procedures. The requirement is based on the presumption that states maintain adequate and effective remedies to vindicate federal constitutional rights.  *Workman v. Tate,* 957 F.2d 1339, 1344 (6th Cir.1992) ("[T]he principle that federal courts should defer to state courts in the interest of comity assumes that the state courts will give prompt consideration to claims of violation of constitutional rights."). The record indicates that the Ohio state courts did not give prompt consideration to Turner's claims. Therefore,

8

> Turner's petition defeated the presumption of adequate and effective remedies at the state level. The district court's dismissal of Turner's petition undermined the fundamental purpose of the exhaustion requirement by denying federal review to claims that were wrongfully ignored by the Ohio courts.
>
> In *Workman v. Tate, supra,* this Court held that a *habeas corpus* petitioner's failure to exhaust state remedies should be excused where his "petition for post-conviction relief has languished in state court for more than three years." *Workman,* 957 F.2d at 1344. This court reasoned that the state court's inordinate delay in adjudicating the petitioner's claims rendered the state procedures "ineffective or inadequate" and thus "undercut" the foundation of the exhaustion requirement. *Id.* at 1344; *see also Moore v. Egeler,* 390 F.Supp. 205, 207-08 (E.D.Mich.1975) (Holding that "in order to render [petitioner's] State remedies truly effective" the exhaustion requirement should be excused for the purposes of court's *habeas* jurisdiction.)
>
> In *Harris v. Champion,* 938 F.2d 1062, 1066 (10th Cir.1991), the Court of Appeals for the Tenth Circuit held that the failure of the Oklahoma public defender to pursue the petitioner's state court appeal excused the petitioner from satisfying the exhaustion requirement of 28 U.S.C. § 2254 where such failure resulted in a projected four-year delay in the petitioner's case.
>
> \*\*\*
>
> In *Carpenter v. Young,* 50 F.3d 869 (10th Cir.1995), the Court of Appeals for the Tenth Circuit applied the rule stated in *Harris v. Champion, supra* and held that the exhaustion requirement should be excused and the petitioner entitled to *habeas* relief unless the state could justify the two-year delay in adjudicating his appeal. *Carpenter,* 50 F.3d at 870.

*Turner v. Bagley,* 401 F.3d 718, 724-25 (6th Cir. 2005).

Here, petitioner's post conviction action has been pending in the state trial court for more than a year and a half. Further, it does not appear that any of the issues presented in petitioner's post conviction petition are so complex as to require an undue amount of time for resolution of his

9

claims. Aside from the State's September 2004 motion to dismiss petitioner's post conviction petition as untimely, no requests for discovery or other motions have been filed in post conviction proceedings, nor does it appear that an evidentiary hearing has been scheduled. Respondent has offered no justification for the state court's failure to render a decision or take any action on petitioner's post conviction petition for the time period at issue. Finally, it does not appear that a ruling by the state trial court is forthcoming. To stay proceedings under such circumstances would simply be to cause further delay in adjudication of petitioner's federal habeas corpus petition.

Respondent's contention that petitioner's claims three through six are procedurally defaulted likewise is unpersuasive. All such claims were raised in petitioner's September 1, 2004, amended petition for post conviction relief, which action, again, apparently has been pending since August 2004. *See* Exhibit 19 to Return of Writ. Thus, the state courts have failed to enforce state procedural rules barring presentation of petitioner's claims in post conviction proceedings. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under such circumstances, this Court likewise, cannot enforce any procedural default of such claims. *Id.* Additionally, as discussed, *supra,* in view of the trial court's inordinate delay in issuing a decision on petitioner's post conviction petition, neither a dismissal nor a stay of proceedings on grounds of exhaustion appears warranted. The Magistrate Judge therefore **RECOMMENDS** that respondent be **DIRECTED** to provide supplemental briefing regarding the merits of claims two through six.

### III. CLAIM ONE

In claim one, petitioner asserts that there is constitutionally insufficient evidence to sustain his convictions. Because a copy of the state trial transcript has not been made a part of the record

before this Court, respondent is **DIRECTED** to provide a copy of the state trial transcript within twenty (20) days so that the Court may consider the merits of petitioner's claim.

## IV.

In view of all of the foregoing, the Magistrate Judge **RECOMMENDS** that petitioner's request for a stay of proceedings, Doc. No. 2, and respondent's request for a stay or dismissal of petitioner's claims be **DENIED**, and that respondent be **DIRECTED** to provide supplemental briefing regarding the merits of the remainder of petitioner's claims and a copy of the state trial transcript within twenty (20) days of the date of this order.

Petitioner's April 17, 2006, request for an extension of time to file further pleadings if such pleadings are required is **DENIED**, as moot.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States*

11

*v. Walters*, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
