# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

EUGENE ANDERSON,  CASE NO. 2:05-cv-1089
                                    JUDGE MARBLEY
      Petitioner,  MAGISTRATE JUDGE KEMP

v.

THOMAS McBRIDE, Warden,
REGINALD WILKINSON, et al.,

      Respondents.

## OPINION AND ORDER

On August 15, 2008, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus be dismissed. Petitioner has filed objections to the Magistrate Judge's *Report and Recommendation*. Petitioner objects solely to the Magistrate Judge's recommendation of dismissal of claim two, in which he asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004). For the reasons that follow, petitioner's objections are **SUSTAINED.** The petition for a writ of habeas corpus conditionally is granted on petitioner's claim that his sentence violates *Blakely*. Petitioner's sentence is **VACATED**. The State must release petitioner or re-sentence him within thirty (30) days. The *Report and Recommendation* otherwise is **ADOPTED** and **AFFIRMED**. The remainder of petitioner's claims are **DISMISSED.**

This case presents an unusual time line of events in relation to petitioner's *Blakely* claim because the state appellate court affirmed petitioner's convictions and sentence on March 2, 2004, prior to the United States Supreme Court's June 24, 2004, decision in *Blakely*,

and petitioner filed his memorandum in support of jurisdiction on appeal to the Ohio Supreme Court on April 16, 2004, also prior to *Blakely*; however, the Ohio Supreme Court dismissed petitioner's appeal on July 13, 2004, *see Exhibit 13 to Return of Writ*, after *Blakely*. Therefore, although *Blakely* plainly applies to petitioner's sentence in this case, as his appeal remained pending in the Ohio Supreme Court at the time *Blakely* was decided, petitioner nonetheless could not raise his *Blakely* claim on direct appeal,[1] where the failure to raise such on-the-record claim ordinarily results in a waiver of such claim in federal habeas corpus proceedings, absent a showing of cause and prejudice for such procedural default. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

As detailed in the Magistrate Judge's *Report and Recommendation* petitioner first presented his *Blakely* claim to the state courts in his August 16, 2004, delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). The state appellate court denied the application as untimely, *Exhibit 15 to Return of Writ*, and petitioner never filed a timely appeal of such decision to the Ohio Supreme Court. The Magistrate Judge concluded that petitioner thereby procedurally defaulted such claim, because the Ohio Supreme Court may have addressed the merits of petitioner's *Blakely* claim had he pursued a timely appeal, and because the Magistrate Judge further was unpersuaded that the state appellate court had misapplied its own procedural rules in refusing to consider petitioner's

---

[1] Petitioner contends that Ohio law did not permit him to amend his memorandum in support of jurisdiction before the Ohio Supreme Court to include a *Blakely* claim after *Blakely* was decided. *See Memorandum in Response to Recommendations*, Doc. No. 31; Ohio Supreme Court Rule of Practice VIII, Section 7.

*Blakely* claim in post conviction proceedings.

However, to reiterate, the state appellate court refused to address the merits of petitioner's untimely post conviction petition as follows:

> Eugene Robert Anderson appeals the Washington County Common Pleas Court's dismissal of his petition for post-conviction relief for lack of jurisdiction. The crux of Anderson's argument is that the trial court erred when it dismissed his petition as untimely filed, because the United States Supreme Court recently created a new federal right exempting him from the 180-day-filing requirement contained in R.C. 2953.21. Namely, Anderson contends that the United States Supreme Court's decision in *Blakely v. Washington* (2004), 542 U.S. 296 created a new federal right entitling him to relief. Because we have already addressed this issue in *State v. Wilson*, Lawrence App. No. 05CA22, at ¶ 14, 2006-Ohio-2049, and found that *Blakely* did not create a new federal right, Anderson does not satisfy the first prong of the two-pronged test in R.C. 2953.23(A)(1), which creates an exception to the 180-day-time requirement for filing a post-conviction petition. Therefore, we find that the trial court did not err in finding that Anderson did not timely file his petition or demonstrate an exemption from the time requirement. Consequently, the trial court correctly determined that it lacked jurisdiction to consider the merits of Anderson's petition and dismissed it. Accordingly, we affirm the judgment of the trial court.
>
> The trial court convicted Anderson in 2002, and sentenced him in early 2003. Anderson appealed. The transcript for an appeal to this court was filed on March 7, 2003. We affirmed the trial court's judgment in *State v. Anderson*, Washington App. No. 03CA3, 2004-Ohio-1033, appeal not allowed by State v. Anderson, 102 Ohio St.3d 1533, 2004-Ohio-3580, and certiorari denied on December 6, 2004, by *Anderson v. Ohio*, 543 U.S. 1027.
>
> On September 3, 2004, Anderson filed his petition for post-conviction relief, alleging that the *Blakely* decision required the court to revisit its sentencing decision. On July 17, 2006, the court dismissed Anderson's petition because it lacked

jurisdiction. The court found that he did not file the petition within the 180-day-time period as required by R.C. 2953.21(A)(2), and that he failed to show that any of the exceptions to the filing deadline set forth in R.C. 2953.23 applied. Specifically, the court found that " *Blakely* did not create a new right [when it was decided in 2004] because the Constitutional principal announced in *Blakely* was recognized and articulated in 2000 in *Apprendi v. New Jersey* (2000), 530 U.S. 466."

Anderson timely appeals, asserting that the trial court erred when it found that *Blakely* did not create a new federal right.

The crux of Anderson's contention is that the trial court erred when it dismissed his petition for post-conviction relief, because he failed to timely file it. He does not dispute that he failed to file his petition within the 180-day-time period prescribed by R.C. 2953.21(A). Instead, he argues that an exception contained in R.C. 2953.23(A)(1) excuses his late filing.

Pursuant to R.C. 2953.23(A)(1), a court may not entertain a delayed petition for post-conviction relief unless the petitioner satisfies a two-pronged test. First, the petitioner must show either: "that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in [R.C. 2953.21(A)(2) ] or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right." R.C. 2953.23(A)(1)(a). Second, the petitioner must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *." R.C. 2953.23(A)(1)(b).

Thus, before a trial court may consider an untimely petition for post-conviction relief, the petitioner must prove: (1) that he was unavoidably prevented from discovering the facts upon which he bases his petition, or that the petitioner's claim is

based upon a newly-created federal or state right, which is retroactive to his situation; and (2) that clear and convincing evidence demonstrates that no reasonable factfinder would have found him guilty in the absence of the alleged constitutional error. *State v. Howell* (June 26, 2000), Meigs App. No. 99CA677.

This Court's standard of review is *de novo* when reviewing a trial court's dismissal or denial of a petition for post-conviction relief without a hearing. *See, e.g., State v. Barney*, Meigs App. No. 05CA11, 2006-Ohio-4676; *State v. Gibson*, Washington App. No. 05CA20, 2005-Ohio-5353. Thus, we will independently review the record, without deference to the trial court's decision, to determine if Anderson's petition satisfies the two-pronged test in R.C. 2953.23(A)(1).

Anderson contends that, under the grounds enunciated in *Blakely*, his sentence is contrary to law. He maintains that this case creates a new right that now applies retroactively to individuals in his situation. In *Blakely*, the Court held that the Sixth Amendment right to a jury trial prohibits the enhancement of a sentence based on factual findings made by the judge. *Blakely* at 301. However, we have already addressed this issue and found that *Blakely* did not create a new right, because it only applied the principles that were already established in *Apprendi, supra. Wilson, supra.*

Here, the trial court sentenced Anderson in 2003; after which he should have appealed any new right created by *Apprendi*. The new rights created by *Apprendi* were created prior to-not subsequent to-Anderson's sentencing. As such, Anderson's situation does not comport with the first prong of the two-pronged test set forth in R.C. 2953.23(A)(1) to except him from the requirement to timely file his petition for post-conviction relief. Specifically, Anderson did not show that the United States Supreme Court recognized a new federal right subsequent to the period of time prescribed in R.C. 2953.21(A)(2). Because Anderson must satisfy both prongs of R.C. 2953.23(A)(1) and he failed to satisfy the first prong, i.e. R.C. 2953.23(A)(1)(a), we do not need to address the second prong, i.e. R.C. 2953.23(A)(1)(b).

> Therefore, for the above stated reasons, we find that the trial court lacked jurisdiction to entertain the petition and properly dismissed it. *See Wilson, supra; State v. Rawlins*, Scioto App. No. 05CA3021, 2006-Ohio-1901; *State v. Kelly*, Lucas App. No. L-05-1237, 2006-Ohio-1399, at ¶ 12.
>
> Accordingly, we overrule Anderson's argument that he satisfied the two-pronged test in R.C. 2953.23(A)(1) and affirm the judgment of the trial court.

*State v. Anderson,* 2007 WL 949470 (Ohio App. 4th Dist. March 27, 2007). The state appellate court thus refused to address the merits of petitioner's claim by concluding that he should have raised a *Blakely* claim under the principals announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This reasoning does not withstand decisions of the United States Court of Appeals for the Sixth Circuit concluding that *Blakely* could not have been anticipated from *Apprendi* and failure to anticipate the rule of *Blakely* does not constitute constitutionally ineffective assistance of counsel. *Cvijetinovic v. Eberlin*, 2008 WL 918576 (N.D. Ohio March 31, 2008), citing *United States v. Burgess*, 142 Fed.Appx. 232, 240 (6th Cir. 2005)(unpublished); *Nichols v. United States*, 501 F.3d 542 (6th Cir. 2007), *rehearing en banc granted, opinion vacated January 3, 2008*), and *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). Further, while the Court recognizes that petitioner failed to file a timely appeal to the Ohio Supreme Court in Rule 26(B) proceedings, petitioner correctly notes that the only claim that would have been properly addressed by the Ohio Supreme Court under Ohio's Rule 26(B), was the nonmeritorious claim of ineffective assistance of counsel.

For all the foregoing reasons, this Court concludes that this case is akin to another decision of this Court referred to by petitioner, *Tanner v. Wolfe,* 2007 WL 649960 (S.D. Ohio

February 23, 2007), and that petitioner reasonably promptly and fairly presented his *Blakely* claim to the state courts such that the claim is properly considered in these proceedings.

**MERITS**

Petitioner asserts that his sentence violates *Blakely* because the trial court engaged in judicial fact finding to impose non-minimum, maximum, and consecutive sentences. *Petition*, at 6. Because the state courts did not consider the merits of petitioner's claim, this Court conducts a *de novo* review. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001).

The trial court imposed sentence in a judgment entry which indicates in relevant part as follows:

> The Court has considered the record, the written reports, including the pre-sentence investigation report and the victim impact statements, the statements made at today's hearing and Ohio law as it relates to sentencing for a felony, including R.C. 2929.11, 2929.12, 2929.13, 2929.14,, and 2929.19.
>
> The Court FINDS that the following recidivism and seriousness factors are present:
>
> The injury was made worse by physical or mental or age of the victim and the Court has in mind both the victims of the corruption of a minor charge, the prostitution (involving a minor) charge, and the children involved in the contraband material.
>
> Serious psychological harm has been caused by the acts of this defendant. The Court has in mind again those same people mentioned in the item immediately above.
>
> At least one of the offenses was related to the defendant's position and that is the offense which deals with his misuse of

the college computer, and in that regard also that he was obliged as the head of the technology department to prevent the very offense with which he committed and that his activity was likely to influence others.

The Defendant's relationship to the victims facilitated the offenses for which he was convicted and again the Court has in mind the offenses in regard to some of the porn, specifically that where the defendant was in direct contact with the person who was the object of the photographs and requested and solicited those photographs and the events which involve contributing to the delinquency of a minor and the prostitution counts.

Whereupon, the Court FINDS the following factor present that makes this case less serious than the norm:

The defendant did not cause or expect to cause physical harm to persons or property.

The Court FINDS that the following factors are present that relate to the likelihood that the defendant will commit further crimes:

The Court notes the defendants' record which has been previously mentioned.

The Court finds that the circumstances which are presented here are likely to recur, based on the Defendant's sexual interest in minors.

The factors previously articulated on which the Court determines that the Defendant is a sexual predator.[2]

---

[2] The trial court adjudicated petitioner a sexual predator as follows:

[T]he Defendant Eugene Robert Anderson, is a Sexual Predator because he is a person who has committed sexually oriented offenses, and because he is a person who is likely to engage in one or more sexually oriented offenses in the future. The Court makes this determination upon the evidence adduced and the following factors:

The defendant's age, which is now 52, and between the ages of 45 and 50 at the time of the offenses in front of this Court.

The defendant has a prior criminal record regarding all offenses.... [H]is record is limited to the Contributing to the Delinquency of a Minor in 1971, however, the court notes his admission to the offense of indecent exposure in West Virginia in 1985.

The age of the victim of the sexually oriented offenses for which sentence is to be imposed. Considering the children in photographs to be the victims, that is an extremely wide range, from very young, perhaps as young as 3 or 4, certainly up through the teenage years.

Whether the sexually oriented offenses for which sentence is to be imposed involved multiple victims. With respect to the photographs, there are multiple victims. There is also a sexually oriented offense involving Brian Sidwell.

There was no evidence of the use of drugs or alcohol to impair victims.

Whether the defendant completed any sentence imposed for prior offenses. It appears that he did.

Mental illness or disability of the defendant. The Court notes that it appears that there has been some, diagnosed depression and some involvement in previous treatment, although there is no evidence before the Court as to whether such illness to the behavior [sic] in front of this Court, the Court is not aware.

The nature of the offender's sexual conduct, sexual contact, or interaction. There was a long series of events with Brian Sidwell involving oral intercourse which the Court finds to be a part of a demonstrated pattern of abuse.

The Court further notes that this defendant prayed on the most vulnerable and susceptible groups of children in this area in order and sexual partners, beginning to groom them as very young teenages, and perhaps even before their teen years, in order to have sex with them as they matured.

9

Whereupon, the Court FINDS the following factors are present that make this Defendant less likely to recidivate:

The defendant has no prior juvenile convictions.

The Court finds nothing else here which would make his recidivism less likely.

Pursuant to Revised Code Section 2929.13(B)(1)(h), the Court FINDS that the following prison factors are present:

The Court FINDS that the defendant held a public office or position of trust and the offense was related to that position and he was obligated by that position to prevent the offense and that his reputation or position facilitated the offense that was likely to influence the conduct of others. The Court further FINDS that the crimes involved were sex offenses and that he is not amenable to any available community control sanction.

\*\*\*

The Court further notes that the nature and quantity of the offenses involved indicate that a prison sentence is warranted.

\*\*\*

The Court notes that Ohio law requires certain findings and therefore the Court hereby further articulates the following

---

Whether the defendant, during the course of the commission of the sexually oriented offenses, displayed cruelty and made other threats of cruelty, the Court finds that is not here.

Additional behavior or characteristics which contribute to the defendant's conduct: the Court notes that it appears that this offender has, discounting contributing to the delinquency of a minor even since we have no details of that, but at least from the early 80's, was involved in exposing himself to very young children, was engaged in the course of the events, which evidence was presented in this Court with sexual activity with children whom he groomed, and befriended, and betrayed.

findings and facts in support thereof in accordance with R.C. 2929.14:

This is the defendant's first prison term and the Court has not imposed a minimum sentence on any of the penalties which have been imposed, so this finding applies to every count on both indictments.

The Court has determined that imposing the minimum sentence would not be adequate to protect the public nor to punish this offender. The Court makes its findings based on the following factors:

This defendant has for many years involved himself with minors sexually. He picked his victims from among the most vulnerable children in our area, children from broken homes, children from poor families, and upon meeting these children the defendant would ingratiate himself with the family and with the child providing gifts, meals, vacations, cash, cigarettes. And then once the child trusted him, he would engage the child sexually, usually providing some payment, thereby increasing the child's sense of guilt and decreasing the chance of disclosure. This happened not just with one child but with many.

As to the counts involving illegal sexually oriented material, obscene material, and nudity oriented material involving minors, this defendant amassed a significant "child pornography" collection. The Court will not detail here the horrors of that collection, but most of those photographs involve what used to be described as "hard pornography", depicting children, some very young, involved in anal and oral intercourse. The defendant had programs that automatically collected these materials from sites that specialize in child pornography. The defendant not only obtained this pornographic material, he copied it. The Court notes that despite Mr. Anderson's statement, these items were not just found on Caleb (the server technically owned by another person), but on discs found in his (Mr. Anderson's) office and that these discs contained other information related directly to him.

The children involved in the production of this material were certainly harmed, physically and psychologically. Serious and long-term damage is almost a certain result of this exploitation and while the defendant may in his mind separate himself from this damage, he is a part of the audience for whom these children are destroyed. The defendant indicates that he believed that some of the persons he talked to in his chats were shields for porn sites where persons were paid for graphic child pornography. He thus knew that he was a part of the audience and encouraged the destruction of additional children by his participation in these sites. For those reasons, no minimum sentence is imposed.

For those counts upon which the Court has imposed the maximum penalty, to wit, Counts 131, 21, 109, 111, 113 and Counts 2, 7, 8, and 9 in Case Number 02-CR-238, in order to impose the maximum sentence, the Court must find that the offender committed the worst form of the offense and that he poses the greatest likelihood of recidivism.

It is clear in regards to the cases involving child pornography that this is the worst form of child pornography that exists, but the Court did not impose the maximum penalty in regards to all of the child pornography, but only those cases where the defendant had a direct relationship to the person who was providing him with the photograph or the chat.

The Court FINDS that those pornography offenses in which the Defendant had a direct relationship with the victims were among the worst forms of the offenses.

In particular, the Court notes that the Paul 10 chat/transcript was material directly produced with the defendant engaging in a chat with another individual who purported himself to be 10 years old. Copies of that chat were found on all of the computers to which this defendant had access.

In regards to Ti_11m and Boxer Boy 1 and 2, the defendant obtained this pornography directly from the minors whose photographs he obtained. He was aware that at the time he got the photographs that they portrayed minors, even though he

12

may not have known from the conversation initially. Particularly in regards to Ti_11m, the Defendant received a series of photographs indicating clearly that this was a child. Regardless of who the Defendant was actually talking to, the photographs he was receiving were of an 11 year old.

In regards to Boxer boy, it is clear that he was aware of the age of the person with whom he was dealing at the time he asked for the photographs, based on the chat evidence presented at trial.

The maximum penalty for the unauthorized use of the Marietta College computer is imposed because the Court also FINDS that this is absolutely the worst misuse of the computer that can be imagined.

With respect to the charges of Corruption of a Minor, Promoting Prostitution (involving a minor), and Prostitution, all of these counts involve people who the defendant groomed as sexual partners from very young ages.

The Court herein incorporates its findings regarding these offenses from its findings in regard to imposition of more than the minimum sentence, including the seriousness and recidivism findings set forth above. Based on such findings, the Court FINDS that each of these offenses committed by the Defendant was one of the worst forms.

The Court also FINDS that this defendant poses the greatest likelihood of recidivism. While he expresses remorse, the court is not convinced. He has had a long term interest in juvenile pornography and he had long-term involvement with multiple victims in the crimes involving sexual contact with victims. The Court also herein incorporates the findings with respect to the Sexual Predator determination. Many of these victims were young.

With respect to these offenses (for which the Court has imposed the maximum term) the Court also imposes consecutive sentences.

In order to impose consecutive sentences, the Court is required to engage in analysis and enunciate the reasons in accordance with R.C. 2929.14.

Therefore, the Court finds:

1. Consecutive Sentences are necessary to protect the public from future crime and to punish the Defendant;

2. Consecutive Sentences are not disproportionate to seriousness of the Defendant's conduct and to the danger he poses to the public.

The Court further finds that all of the offenses for which the Court imposes consecutive sentences were part of one or more courses of conduct and that the harm caused by all of the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the Defendant's conduct in that he repeatedly solicited sexually explicit photographs from minors and engaged them in sexually explicit conversation and repeatedly engaged vulnerable and socially and economically disadvantaged minors in sexual conduct for hire after befriending them and earning their trust. He copied the photographs and conversations.

For purposes of determining the specified sentences to be consecutive, the Court further notes and incorporates its previous findings as stated above with respect to the reasons for imposing the maximum sentence and for imposing more than the minimum sentence as well as the following findings:

The Court finds that as to the child pornography possessed by this defendant, the harm caused was great and incorporates its previous findings in that regard.

As to the corruption and prostitution charges, the psychological damage caused by that was incredible. And again the Court notes there were multiple victims for these offenses.

The Court further finds that the consecutive sentences imposed

> are necessary to fulfill the purposes of principals of sentencing, specifically to protect the public and punish this offender. The Court finds the sentences it has imposed is not disproportionate to the seriousness of the Defendant's conduct or the danger that he poses to the public. The Court finds again that he regularly prayed on groups of extremely vulnerable children and that the danger of him continuing that behavior if not incarcerated for a lengthy period is great.
>
> The Court notes that the sentences imposed constitute a prison term of 75 years and four (4) months, definite time and four years to 25 years indefinite time which should be adequate to protect the public.

*Exhibit 5 to Return of Writ*. Thus, the record reflects that the trial court justified imposition of maximum, consecutive, and non-minimum terms of incarceration based upon judicial fact finding prohibited under *Blakely*. *See Exhibit 1 to Return of Writ*.

*Blakely* defined "statutory maximum" as:

> not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

*Blakely v. Washington, supra*, 542 U.S. at 303. The Ohio Supreme Court has since excised portions of Ohio's sentencing statutes requiring judicial fact finding prior to imposition of sentence as unconstitutional under *Blakely*. *State v. Foster*, 109 Ohio St.3d 1 (2005).

In view of the foregoing, petitioner's objections are **SUSTAINED**. The petition for a writ of habeas corpus conditionally is granted on petitioner's claim that his sentence violates *Blakely*. Petitioner's sentence is **VACATED**. The State must release petitioner or re-sentence him within thirty (30) days. The *Report and Recommendation* otherwise is **ADOPTED** and **AFFIRMED**. The remainder of petitioner's claims are **DISMISSED.**

**IT IS SO ORDERED.**

                                                    s/Algenon L. Marbley
                                                ALGENON L. MARBLEY
                                                United States District Judge